# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 50205 | **DATE** | 7/12/2013 |
| **CASE TITLE** | Hines v. Wild, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motions for summary judgment [240] [247] are granted in part and denied in part. Plaintiff's cross-motion for summary judgment [255] is denied. Plaintiff is ordered to explain on or before August 2, 2013 why the court should not enter summary judgment as to Count IV. Defendants' response, if any, is due on or before August 16, 2013. The court reserves ruling on Counts VIII and IX until it considers the responses to this order.



■[ For further details see text below.]  Docketing to mail notices.

---

Plaintiff, Montorio Hines, has sued Darcy Wild, Dan Scott, Pete Paesani, and Duane Armstrong, all of whom are parole agents with the Illinois Department of Corrections (collectively "IDOC defendants"), as well as Dennis Taylor, Brad Larson, and Michael Schissel, all of whom are Rockford police officers (collectively "RPD defendants"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 and state law. Hines' claims each arise from his July 20, 2006 arrest and the subsequent search of the apartment at which he was found. Pending before the court are defendants' motions for summary judgment and Hines' cross-motion for summary judgment. For the reasons which follow, defendants' motions for summary judgment are granted in part and denied in part and Hines' cross-motion for summary judgment is denied.

## I. BACKGROUND

Hines, who is currently incarcerated at Pinckneyville Correctional Center, was arrested on July 20, 2006 by the RPD defendants. At the time of his arrest, Hines was a parolee of the IDOC on mandatory supervised release.

According to defendants, on July 19, 2006, Scott received an anonymous tip that Hines, a parolee for whom Scott was responsible, had violated the terms of his parole by moving from his normal residence to 2208 8th Street, Apartment P6, in Rockford, Illinois, without first informing his parole officer of the move. The following day, July 20, 2006, Scott received a similar tip, which also mentioned that Hines had possession of drugs and firearms. Prior to these tips, Hines had already violated his parole terms in various ways, including testing positive for drug use. After getting the tip, Scott, Armstrong, and Paesani went to 2208 8th Street and knocked on the door of Apartment P6 to investigate the tips. Hines answered and opened the door. The agents entered and saw a leafy green substance on a nearby counter. Hines admitted to living in the apartment and produced two rent receipts with his name on them which he provided to the officers. At that point, Scott called the Rockford Police. The parole agents then handcuffed Hines and searched the apartment, which yielded cash, drug paraphernalia, a substance that resembled crack cocaine, a white powder that resembled cocaine, and three

handguns. By the time Scott finished his search, the RPD defendants had arrived and they arrested Hines based on the fruits of Scott's search. One of the terms of Hines' parole was that he would "consent to a search of [his] person, property, or residence under [his] control."

Hines' version of the events of July 20, 2006 is similar, but for a few key differences. First, Hines alleges he was living at 2887 East Forest View Avenue, Apartment 2, in Rockford, Illinois, which was his registered home site, and was at 2208 8th Street just checking on the apartment for Jacqueline Mason, the mother of his son, and resident of the apartment, who was out of town at the time. Hines also alleges in his second amended complaint that the anonymous tips were fabricated by Scott, along with the other alleged violations of his parole conditions. When defendants arrived at the door of the apartment at 2208 8th Street, Hines alleges that defendants had no reason to believe he had moved to 2208 8th Street and had no good faith reason to believe that Hines had committed, or was about to commit, a crime. He also denies providing Scott with the rent receipt. Additionally, he alleges that the RPD defendants, as well as Scott, Armstrong, and Paesani, took part in the search. Finally, he alleges that after the RPD defendants arrested him, he was "physically assaulted" and coerced into claiming that the items seized at 2208 8th Street were his. (Second Amended Compl. ¶ 31.)

Following his arrest, Hines was charged by indictment in the Circuit Court of Winnebago County, Illinois. Hines moved to suppress the evidence seized from 2208 8th Street and his confession, alleging that the actions of the assorted officers violated the Fourth and Fifth Amendments. The trial court held a hearing on the matter, where Hines himself was permitted to examine the officers involved, with stand-by counsel from the public defender's office. Following those examinations, and with the benefit of argument from both parties, the court held that "based upon the totality of the circumstances," it did "not find that the officers violated [Hines'] rights." (Trial Tr. 06-CF-2736, Jan. 3, 2008, at 46.) Hines was thereafter convicted of one count of possession of a controlled substance, one count of possession of a weapon as a felon, and one count of being an armed career criminal. Hines was sentenced to twenty-two years in prison followed by three years of mandatory supervised release on the armed career criminal charge, with the other two sentences being shorter and running concurrently.

Before his conviction, but after the arrest, Hines filed the instant suit in this court. Hines has since amended his complaint several times, with the current operative complaint being titled the Second Amended Complaint. Several claims and defendants were dismissed in a prior order from this court. Currently remaining in the litigation are the following claims against the following individuals: Count I alleges an unlawful entry of 2208 8th Street pursuant to § 1983 against Scott, Paesani, Armstrong, and the RPD defendants; Count II alleges an unlawful search and seizure of Hines pursuant to § 1983 against Scott, Paesani, Armstrong, and the RPD defendants; Count III alleges an unlawful arrest of Hines pursuant to § 1983 against Scott, Paesani, Armstrong, and the RPD defendants; Count IV alleges excessive force pursuant to § 1983 against Larson and Schissel; Count VIII alleges intentional infliction of emotional distress pursuant to Illinois state law against the IDOC defendants and the RPD defendants; and Count IX alleges civil conspiracy pursuant to Illinois state law against the IDOC defendants and the RPD defendants. The IDOC defendants filed a motion for summary judgment and the RPD defendants filed a separate, but virtually identical, motion advancing most of the same grounds. Hines did not respond directly, but instead filed a "cross-motion" for summary judgment, which responds to defendants' arguments and includes hundreds of pages of exhibits, but does not set out why this court should enter summary judgment in his favor. Accordingly, the court will deny Hines' request for summary judgment, but nevertheless consider the arguments he makes in his memorandum in support of that motion as a response to defendants' motions.

## II. ANALYSIS

### A. Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). In evaluating such a motion, the court's role is "not

to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Hemsworth, 476 F.3d at 490. The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Id. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Id. The party need not meet, in the court's eyes, the preponderance of the evidence standard, but must still provide more than a "mere scintilla" of evidence to show that there is a genuine issue of material fact. See Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co., 600 F.3d 878, 882 (7th Cir. 2010).

As noted above, Hines failed to respond to defendants' Local Rule 56.1 Statements of Uncontested Facts as instructed by the rule. See Local Rule 56.1(b)(3) (stating that a party opposing summary judgment should respond to the movant's Rule 56.1 statement with a "concise response" including "numbered paragraphs, each corresponding to and stating a concise summary of the paragraph to which it is directed," "a response to each numbered paragraph in the moving party's statement . . . and . . . supporting materials relied upon," and "a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to . . . supporting materials relied upon."). Where, as here, a plaintiff fails to adequately respond to defendants' statements of undisputed facts, Local Rule 56.1 states that "[a]ll material facts set forth in the statement required of the moving party will be deemed admitted . . . ." The Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission." Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003); see also Wilson v. Kautex, Inc., 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion even though Wilson is a pro se litigant." (citation omitted)). Accordingly, this court accepts as true all the facts as set out in defendants' Rule 56.1 statements, and is now merely tasked with determining if, accepting all those facts as true, defendants are entitled to summary judgment.

## B. Heck v. Humphrey

In their motions, defendants argue that all of Hines' remaining claims are barred by the doctrine set out in Heck v. Humphrey, 512 U.S. 477 (1994). The Heck doctrine requires that this court dismiss any civil action which necessarily implicates the validity of a state court conviction. See Evans v. Poskon, 603 F.3d 362, 363 (7th Cir. 2010). However, criminal convictions for being an armed career criminal or possessing drugs and firearms would not necessarily be invalidated by this court finding that Hines suffered an illegal search or seizure or that he was the subject of excessive force. See id. at 363-64 ("Many claims that concern how police conduct searches or arrests are compatible with a conviction. For example, an arrest without probable cause violates the fourth amendment but does not imply the invalidity of a conviction, because courts do not suppress the body of the accused. Similarly, a court's decision not to suppress illegally seized evidence can lead to a conviction without blotting out a § 1983 challenge to the seizure. The exclusionary rule is used in only a subset of all constitutional violations—and excessive force in making an arrest or seizure is not a basis for the exclusion of evidence." (citations and quotation marks omitted)); Wallace v. City of Chi., 440 F.3d 421, 427-28 (7th Cir. 2006). Indeed, the Supreme Court in Heck itself pointed out as much. See Heck, 512 U.S. at 487 n. 7 ("For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." (citations and quotation marks omitted)). Accordingly, the Heck doctrine does not, at this point in the proceedings, bar any of Hines' remaining claims.

## C. Rooker-Feldman

Defendants next argue that Hines' remaining federal claims are barred by the Rooker-Feldman doctrine, which draws its name from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court

of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine holds that, outside of the context of 28 U.S.C. § 2254, only the United States Supreme Court has the authority to review a state court judgment. See Sides v. City of Champaign, 496 F.3d 820, 824 (7th Cir. 2007). Rooker-Feldman is a narrow doctrine which implicates the court's jurisdiction to consider a case and applies when "[t]he losing party in state court file[s] suit in a U.S. District Court after the state proceedings [have] ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." Skinner v. Switzer, 562 U.S. ___, 131 S. Ct. 1289, 1297 (2011) (footnote omitted). It is not a doctrine of preclusion and is not intended to take the place of collateral estoppel or res judicata; "[i]f a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." Id. (alterations and quotation marks omitted).

Here, Rooker-Feldman does not apply to bar this court's jurisdiction. None of Hines' claims seek damages arising from the judgment itself, nor do any of his claims seek to have this court nullify his convictions. As set out supra, the claims in this case would not even necessarily have the ancillary effect of implicating the validity of the state court judgment. Instead, Hines seeks money damages for an allegedly illegal search and seizure and for excessive force. Although he may be barred from seeking some of his claims on preclusion grounds, see infra, Rooker-Feldman is not implicated by his remaining claims.

### D. Collateral Estoppel

Defendants next argue that Hines' remaining federal claims are barred by collateral estoppel, also frequently called issue preclusion. See Loera v. United States, 714 F.3d 1025, 1028 (7th Cir. 2013) ("The doctrine of collateral estoppel, an offshoot of res judicata, teaches that a judge's ruling on an issue of law or fact in one proceeding binds in a subsequent proceeding the party against whom the judge had ruled . . . ."). Specifically, they argue that the search and seizure issues were decided by the state trial court on Hines' motion to suppress after a full adversarial hearing on the issue and thus Hines is precluded from arguing the issue again in this suit. Whether Hines' § 1983 claims are barred by the state proceedings is determined by looking to the state's rules for collateral estoppel. See 28 U.S.C. § 1738; Brown v. City of Chi., 599 F.3d 772, 774 (7th Cir. 2010).

> Under Illinois's issue preclusion law, an issue litigated in a prior proceeding may not be relitigated if (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

Brown, 599 F.3d at 774 (quoting Dunlap v. Nestle USA, Inc., 431 F.3d 1015, 1018 (7th Cir. 2005)). "Moreover, under Illinois law, a criminal conviction precludes relitigation of issues that were necessarily decided in the criminal proceedings." Id.

Counts I-III are barred by the doctrine of issue preclusion. The state trial court held a two-day evidentiary hearing permitting Hines to present his arguments that his seizure and the entry/search of the apartment violated the Fourth Amendment. Those are the same issues raised in Counts I-III. There was a final judgment on the merits—the court ruled against Hines at the suppression hearing and Hines was ultimately convicted at trial. Hines appealed that conviction, but voluntarily dismissed his direct appeal. Finally, Hines was clearly a party in that prior adjudication.

Hines argues, however, that he fits within an exception to collateral estoppel recognized in Illinois, specifically that he has "additional evidence" which was not presented at the prior adjudication. That exception only applies, however, when the "additional evidence is discovered after the prior decision." Sornberger v. City of Knoxville, Ill., 434 F.3d 1006, 1020 (7th Cir. 2006) (emphasis added). The additional evidence to which Hines refers is an affidavit filed by his cousin, who lived at 2887 East Forest View Avenue, which states that Hines lived with her, and a purported, but unincluded, affidavit from Mason, the resident of 2208 8th Street, which

purportedly would state that Hines did not live at that address. However, the existence of those individuals, and their purported testimony, was surely information Hines knew at the time of the underlying prior conviction. Indeed, in the motion to quash his arrest and suppress evidence in the state trial court, Hines mentioned both women by name and included the content of their testimony. Accordingly, since this is not additional evidence discovered after the prior decision, it does not fit within the "additional evidence" exception to collateral estoppel.

However, although collateral estoppel requires this court to grant summary judgment as to Counts I-III, it does not require summary judgment as to Count IV despite the RPD defendants' failure to differentiate between the counts in their argument. Count IV, which alleges excessive force against two of the RPD defendants, was not addressed by the state court in its ruling on the motion to suppress. Accordingly, since the issue was not decided by the state trial court, collateral estoppel does not apply. But see infra Section II. F. Nevertheless, because collateral estoppel does bar the relitigation of Counts I-III, the court grants summary judgment to defendants on those counts.

### E. Counts I-III on the Merits

Even if Counts I-III were not barred by collateral estoppel, the court would nevertheless be bound to grant summary judgment to defendants on the merits of those claims. The claims in Counts I-III break down into two discrete concerns: (1) whether Hines was unconstitutionally seized and arrested, which is set out in overlapping allegations in Counts II and III, and (2) whether defendants' entry and subsequent search of 2208 8th Street violated Hines' Fourth Amendment rights, which is set out in overlapping allegations in Counts I and II.

First, as set out above, Hines failed to adequately respond to defendants' Local Rule 56.1 Statements of Uncontested Facts, thereby waiving any contest to them. Based on the waiver, and despite the enormous factual record provided by Hines without adequate explanation or citation, the court grants summary judgment to defendants on Counts I-III. See Greer v. Bd. of Educ., 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut . . . . [N]either appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes. . . . [T]he district court would have been within its discretion to grant the [defendant's] motion for summary judgment on this basis alone . . . ." (quotation marks omitted)).

However, even if Hines had adequately responded to defendants' Local Rule 56.1 statements and supported that response by understandable and concise citations to a more limited and manageable record, the court would still find that there is no genuine issue of material fact as to Counts I-III. The court will first address the allegations of improper seizure in Counts II and III, which allege that Hines was unlawfully seized by defendants based on a violation report that Scott falsified. To seize an individual on mandatory supervised release consistent with the Fourth Amendment, defendants need only have had reasonable suspicion that Hines had violated one of the terms of his mandatory supervised release. See Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003). First, Hines provides no evidence to create a genuine issue of material fact that any of Scott's report was falsified. The closest he comes is an allegation that Scott learned of Hines' purported change of address not through an anonymous tip, but rather through a vehicle registration in Hines' name that listed 2208 8th Street as the home address.[1] Hines claims he did this on behalf of Mason, rather than on his own behalf, and thus it is not evidence of his actual residence. However, Hines provides no evidence that shows that Scott was aware of the vehicle registration at the time he filled out the violation report, or that the anonymous tips did not occur. Nevertheless, even if a judge or jury were to find Hines' story to be true, Scott certainly could have used the information from the vehicle registration to form a reasonable suspicion that Hines had violated the terms of his parole by changing his home residence without informing his parole officer. Additionally, Hines admitted in his deposition that he had failed drug tests, and thereby violated the terms of his parole, so at least that portion of the violation report was accurate. Hines' admission that he failed drug tests provided defendants with the reasonable suspicion necessary to seize Hines for violation of the terms of his mandatory supervised release, regardless of whether everything else in the violation report was falsified or not. Accordingly, even if the court were to take into account Hines' voluminous submissions, there is no genuine issue of material fact as to the constitutionality

of the seizure set out in Counts II and III.

That leaves the entry/search allegations of Counts I and II. Defendants claim Hines lived at the 2208 8th Street apartment. However, Hines claims he did not live at the apartment but merely checked it and occasionally got something to eat there while Mason was out of town. Under either factual scenario, Hines has not set out a genuine issue of material fact. If defendants are correct, and Hines lived at 2208 8th Street, then Hines unambiguously consented to a search of the premises by parole agents in the terms of his supervised release. See United States v. Shipley, 438 F. App'x 493, 495 (7th Cir. 2011). However, even if a trier of fact were to find that Hines' story is the correct one, he still would not have set out a violation of his Fourth Amendment rights. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 134 (1978). Although an overnight guest may assert that he has a right to privacy in another's dwelling, see Minnesota v. Olson, 495 U.S. 91, 100 (1990), the Supreme Court has resisted attempts by guests who are present in another person's home for less time than an overnight stay to establish a legitimate expectation of privacy, see Minnesota v. Carter, 525 U.S. 83, 90-91 (1998). In United States v. Carlisle, 614 F.3d 750 (7th Cir. 2010), the Seventh Circuit reiterated the "key" factors in determining whether an individual has a legitimate expectation of privacy in any searched property:

> (1) whether the defendant had a possessory or ownership interest in the thing seized or the place searched, (2) whether he had the right to exclude others from that place, (3) whether he exhibited a subjective expectation that it would remain free from governmental invasion, (4) whether he took normal precautions to maintain his privacy, and (5) whether he was legitimately on the premises.

Id. at 758 (alteration omitted) (quoting United States v. Peters, 791 F.2d 1270, 1281 (7th Cir. 1986)). Here, Hines does not claim to have any right to possess or own the apartment, except to check it while Mason was out of town. He does not claim he had any right to exclude others from the place, and clearly lacked the authority to exclude Mason. There is nothing on the record which would show a subjective expectation of privacy or any precautions taken to maintain his privacy during his transient visits. Although he claims he was legitimately on the premises in Mason's absence, none of the other factors weigh in favor of him having a legitimate expectation of privacy in the searched property. Simply being permitted to be on the property temporarily is insufficient to establish a legitimate expectation of privacy. See Carter, 525 U.S. at 90 ("Thus, an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."). Accordingly, there is no genuine issue of material fact based on Hines' allegations that defendants illegally entered and searched an apartment in which he had no legitimate expectation of privacy. Furthermore, even if Hines had made the requisite showing by citation to authority—which he has not—that his transient control over the premises in Mason's absence was sufficient to justify finding a reasonable expectation of privacy, the consent he provided to the parole officers pursuant to the terms of his supervised released included the right to search any "residence under [his] control." Therefore, even if he had established a reasonable expectation of privacy based on his temporary control over the residence at the time of the search, this court would nevertheless grant summary judgment on the entry/search claims in Counts I and II.

For each of the foregoing reasons, the court grants summary judgment as to Counts I-III as to all remaining defendants.

### F. Count IV on the Merits

In the RPD defendants' motion for summary judgment, they lump Count IV, which asserts an excessive force claim against Larson and Schissel, in with the other claims and argue them all together, including a request for summary judgment on all claims in their prayer for relief. However, as set out above, collateral estoppel does not apply to Count IV because the state trial court never considered the issue of Larson and Schissel's force. Furthermore, the RPD defendants provide no specific argument concerning Count IV on the merits and no facts

in their Local Rule 56.1 statement which would permit the court to determine the issue. Accordingly, the court denies the RPD defendants' motion for summary judgment, to the extent it seeks summary judgment on Count IV.

However, because the court has already reviewed the enormous record submissions from Hines and found no evidence that would support a genuine issue of material fact as to Count IV, the court will not simply send the case back to prepare for trial or additional motion practice on Count IV. Instead, pursuant to the terms of Federal Rule of Civil Procedure 56(f), the court is considering granting summary judgment to the RPD defendants on Count IV, but will allow Hines an opportunity to explain why, based on the record before the court, there is a genuine issue of material fact as to Count IV. Accordingly, Hines shall have until August 2, 2013 to offer specific citations to the record to enable the court to determine the question without the need to reread the entire voluminous submission. Failure to respond by August 2, 2013 will result in summary judgment being entered for Larson and Schissel on Count IV.

### G. Counts VIII and IX

The only remaining issues, then, are Counts VIII and IX, which allege the intentional infliction of emotional distress and civil conspiracy under Illinois law. These counts are pled as "catch all" counts, set out to include the actions of all the preceding seven substantive counts, including those that were dismissed from this case in this court's previous order. Indeed, Counts VIII and IX do not have any allegations that establish them apart from those in the preceding seven substantive counts. Nevertheless, the court will reserve its ruling on these counts until it has considered the parties' submissions in response to this order.

### III. CONCLUSION

Defendants' motions for summary judgment are granted in part and denied in part. The court reserves its ruling over the state tort claims in Counts VIII and IX. Additionally, the RPD defendants' motion for summary judgment seeking judgment on Counts IV is denied. Hines is ordered to explain, by specific reference to the record no later than August 2, 2013, why this court should not enter summary judgment on the remaining counts against Larson and Schissel. RPD defendants' shall file their response, if any, by August 16, 2013.

---

1. To the extent Hines is arguing that Scott's acquisition of the information which led him to determine plaintiff's residence itself is a violation of his privacy rights, which is not included in his complaint and far from clear even in his argument, that argument is foreclosed by the pertinent federal statute. In Hines' theory, Scott received the information from an officer who executed a traffic stop and issued a citation to Hines for driving without a license. That officer had the right to get Hines' information in pursuit of his duties and subsequently transfer that information to Scott. See 18 U.S.C. § 2721(b)(1) & (c). Indeed, Scott could have even received that information directly as a government agent on his own initiative. See § 2721(b)(1). To the extent Hines is arguing that a false statement in the parole violation report itself is a violation of his constitutional rights, regardless of whether he was ultimately searched or seized illegally, see Franks v. Delaware, 438 U.S. 154, 155-56 (1978), that argument is foreclosed on a number of grounds. First, that claim does not appear in the amended complaint, and a response to a motion for summary judgment, even if it is titled a "cross motion" for summary judgment, is an inappropriate place to raise new requests for relief. See Shanahan v. City of Chi., 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Second, the Franks doctrine is limited to situations where law enforcement officers seek a warrant from a judicial officer and make false representations on the warrant application, see Franks, 438 U.S. at 156, it has no application where, as here, the alleged misrepresentations were never part of a warrant application, see Alencastro-Mejia v. United States, Nos. C 11-4016-MWB, CR 09-4034-MWB, 2012 WL 5381549, at *7 (N.D. Iowa Oct. 31, 2012) (holding that because the "record indicates that there were no warrants issued," "there simply were no allegedly false statements made

by an affiant, in a relevant affidavit, subject to Franks analysis"). They were, instead, part of a parole violation report. Without evidence that a warrant was based on the alleged misrepresentations in the parole violation report, Franks has no application and there is no need to hold a Franks hearing.